WILL OF HARNISCHFEGER: STATE, Respondent, vs. HAR-
NISCHFEGER and others, Executors, and another, Ap-
pellants.

*March 10—June 20, 1932.*

318

For the appellants there were briefs by *Lines, Spooner & Quarles,* attorneys, *George P. Ettenheim,* guardian *ad litem,* and *Louis Quarles* and *James T. Guy* (and on motion for rehearing *Russell Jackson*) of counsel, all of Milwaukee, and oral argument by *Mr. Quarles, Mr. Guy,* and *Mr. Ettenheim.*

For the respondent there were briefs by the *Attorney General, F. C. Seibold,* assistant attorney general (on motion for rehearing *Fred M. Wylie,* deputy attorney general), *Neil Conway,* inheritance tax counsel, and *A. B. Houghton,* public administrator of Milwaukee county, and oral argument by *Mr. Seibold* and *Mr. Conway.*

The following opinion was filed April 5, 1932:

NELSON, J. This appeal presents two questions for determination:

(1) Does the evidence sustain the conclusion of the county court that the gifts made by deceased within two years prior to his death were made in contemplation of death?

(2) Did the court err in striking out the testimony of Dr. Winnemann and, if so, was such error prejudicial?

So much of sec. 72.01 (3), Stats., as requires consideration is as follows:

*"Transfers in contemplation of death.* When the transfer is of property, made by a resident . . . by . . . gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within two years prior to the death of the grantor, vendor or donor, of a material part of

his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section."

That statute in its present form has not been considered by this court. The history of the several acts of the legislature relating to the taxation of gifts made in contemplation of death, as construed by this court, is both interesting and instructive and tends to show the purpose and intent of the legislature in enacting them.

The original statute, ch. 44 of the Laws of 1903, which first taxed inheritances in this state, taxed gifts "made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." That statute was construed in *State v. Pabst,* 139 Wis. 561, 121 N. W. 351, decided in May, 1909. It is contended by the appellants that, in that case, "in contemplation of death" was defined as being synonymous with "under the apprehension that death is imminent, impending, or near at hand." While apprehension that death is imminent clearly meets the call of the expression "in contemplation of death," we do not think that this court, in the *Pabst Case,* held that only such gifts as were made under the apprehension that death was imminent or near at hand were within the statute. The *Pabst Case* involved facts which strongly tended to show that the deceased therein was afflicted with a serious and incurable disease to which, in the very nature of things, he would soon succumb. Referring to the meaning of the words "in contemplation of death," the court, among other things, said (p. 589) :

"It is manifest that they were intended to cover transfers of parties who were prompted to make them by reason of the expectation of death, and which, in view of that event, accomplished transfers of the property of decedents

in the nature of a testamentary disposition. It is therefore obvious that they are not used as referring to the expectation of death generally entertained by every person. The words are evidently intended to refer to an expectation of death which arises from such a bodily or mental condition as prompts persons to dispose of their property and bestow it on those whom they regard as entitled to their bounty."

Page 591: "The statute was not intended to restrict persons in their right to transfer property in all legitimate ways, but it clearly manifests a purpose to tax all transfers which are accomplished by will, the intestate laws, and those made prior to death which can be classed as similar in nature and effect because they accomplish a transfer of property under circumstances which impress on it the characteristics of a devolution made at the time of the donor's death."

*State v. Thompson,* 154 Wis. 320, 142 N. W. 647, decided May 31, 1913, involved a controversy as to whether the gifts therein were made in contemplation of death. The decision in that case, though not unanimous, seems to rest on whether the findings of the circuit court were sustained by the evidence where the burden of showing that the gifts were made in contemplation of death was upon the State. That case, fairly considered, seems to limit somewhat the definition of "in contemplation of death" stated in the *Pabst Case,* for this court, speaking through Mr. Justice BARNES, said:

"An act is not done in contemplation of death when the feeling that dissolution is approaching is absent and is not the cause which impels or prompts the doing of the act;" and (p. 328): "The definition of the words 'in contemplation of death' given in the *Pabst Case* does not differ from that announced by the New York court in *Matter of Baker,* 83 App. Div. 530, 82 N. Y. Supp. 390 (affirmed, 178 N. Y. 575, 70 N. E. 1094), where it is said: 'This court has held that the words *in contemplation of death* do not refer to that general expectation which every mortal entertains, but rather to the apprehension which arises from such existing condition of body or some impending peril.' "

The decision in that case, which involved large gifts made by Mr. Dessert, the deceased, to his daughter, when he was between eighty-six and eighty-seven and a half years old and which affirmed the lower court, which had held that such gifts were not made in contemplation of death, no doubt prompted the legislature, which was then in session, to amend the statute by enacting ch. 643, Laws of 1913, by adding to sec. 1087—1 (3) the following provision:

"Every transfer by deed, grant, bargain, sale or gift, made within six years prior to the death of the grantor, vendor, or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed to have been made in contemplation of death within the meaning of this section."

The effect of this statute was clearly to create an irrebuttable presumption as to gifts made within six years prior to the death of the grantor. *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734; *Estate of Schlesinger,* 184 Wis. 1, 199 N. W. 951. The *Schlesinger Case* was appealed to the United States supreme court, where it was held that the six-year statute was unconstitutional. *Schlesinger v. Wisconsin,* 270 U. S. 230, 46 Sup. Ct. 260. Thereupon the 1929 legislature enacted ch. 462, Laws of 1929, now sec. 72.01 (3).

It is conceded that the language "be deemed to have been in contemplation of death" gives rise simply to a presumption which may be rebutted by facts showing the contrary. When a grantor, within two years prior to his death, gives away a material part of his estate, in the nature of a final disposition or distribution thereof and without an adequate valuable consideration, a presumption that such gift was made in contemplation of death arises which, in the absence of credible evidence to the contrary, permits the conclusion that such gift was made in contemplation of death. Its

effect is to place upon the donee the burden of showing that such gift was not made "in contemplation of death." Such presumption has no probative weight as against evidence to the contrary, but does create a *prima facie* case for the party in whose favor it exists. 1 Jones, Comm. on Evidence (2d ed.) p. 60; *Stumpf v. Montgomery,* 101 Okla. 257, 226 Pac. 65; *Coleangelo v. Coleangelo,* 46 R. I. 138, 125 Atl. 285. In *U. S. v. Wells,* 283 U. S. 102, 51 Sup. Ct. 446, construing a statute in all respects similar to sec. 72.01 (3), Stats., the court, speaking through Mr. Chief Justice HUGHES, stated:

"The presumption created by the statute that the transfers in question were made in contemplation of death cannot stand against ascertained and proven facts showing the contrary to be true."

In that case the court gave extended consideration to the meaning of "in contemplation of death." While that court expressly stated the difficulties of accurately defining "in contemplation of death," it adopted a somewhat more liberal definition than that promulgated in *State v. Thompson, supra,* if the language of that opinion must be considered as holding that "in contemplation of death" is synonymous with "under apprehension that death is imminent or that some peril is impending." The United States supreme court specifically stated that "contemplation of death" is not "that general expectation which all entertain." "It must be a particular concern giving rise to a definite motive." It is not confined to a gift *causa mortis.* It embraces gifts *inter vivos.* In determining whether a gift was made in contemplation of death, age does not furnish a decisive test, though "old age may give premonitions and promptings independent of mortal disease." "The mere fact that death ensues even shortly after the gift does not determine absolutely" its character. Obviously, condition of body or

mind is of great importance. "Contemplation of death" is not "necessarily contemplation of imminent death." In order that a gift be made "in contemplation of death," the thought of death must be the "impelling cause," the "inducing cause," the "controlling motive." A gift may be "in contemplation of death" without an apprehension that death is imminent or near at hand. It is also important to determine whether the gift accomplishes some purpose desirable to the donor if he continues to live, or whether the gift in question may be said to be associated with life rather than with death.

Though this court is not bound to follow the supreme court of the United States in defining "in contemplation of death," we are necessarily influenced by a carefully considered opinion of that eminent court. Though the definition of "in contemplation of death" received much more thorough consideration by the supreme court of the United States in the *Wells Case* than it did in the *Pabst Case,* due probably to the fact that since the decision in the *Pabst Case* many cases which involved either similar or substantially similar provisions have arisen, yet we do not believe that the *Pabst* and *Wells Cases* differ materially in their definitions of "in contemplation of death."

In any event, we have concluded that a gift may be made "in contemplation of death" within the meaning of our statute when there is no apprehension that death is imminent or near at hand and when there is no peril impending.

We now may consider whether there is evidence to support the conclusion of the county court that the gifts herein, made by deceased within two years prior to his death, were made "in contemplation of death." The statute in substance provides that every gift of a material part of his estate made by a donor within two years prior to his death or in the nature of a final disposition or distribution thereof

without an adequate valuable consideration shall, unless shown to the contrary, be deemed to have been in contemplation of death. We have no hesitation in holding that the gifts which amounted to over $1,900,000 constituted a material part of his estate; that they were made without adequate valuable consideration and were apparently in the nature of a final distribution.

It is earnestly contended that, since the deceased apparently enjoyed good health up to the time of his death, was cheerful and optimistic, was actively engaged in conducting a large industry, was making plans for industrial developments which involved new undertakings and enterprises, the presumption to which the statute gives rise was clearly overcome and that it was affirmatively shown that the gifts were not in fact made in contemplation of death. This argument would be quite persuasive did it not appear that in the fall of 1929 and continuing into February of 1930 the deceased was engaged in carrying out extensive plans looking to the putting of his house in order. He was then nearly seventy-four years of age. He reorganized the Harnischfeger Corporation so that stock might be listed on the Chicago Stock Exchange and so that some of it might be sold to provide funds to liquidate his indebtedness. He organized the Harnischfeger Investment Company so that he and the trustees under his will might have unquestioned control of the corporation. He organized the Harnischfeger Foundation for the benefit of the employees of his company and provided for its permanent endowment out of his properties. He gave large gifts to his wife, who was then about seventy-six years of age, and also large gifts to his son and daughter, as well as substantial gifts to some of his faithful employees and to some of his other relatives. He made arrangements for giving $50,000 to his native village of Salmuenster for the purpose of founding a school, and finally, on February

9th, he executed his will which consisted of twenty type-written pages, evidenced much thought and planning, but by which nothing was bequeathed directly to his son or daughter and by which the residue of his estate, worth only about $440,000, was given to his wife.

While there is no testimony tending to show that the deceased had any premonition or promptings of death as distinguished from that ordinary expectation of death which every one entertains; or that he was conscious or had knowledge of any disease or other affliction, there is abundant evidence, as it seems to us, to support the inference that the gifts were made in contemplation of death. While the enjoyment of health, actively engaging in business, and the making of plans for the future may, at times and in certain cases, be very persuasive, they are not in any sense conclusive. Impelling motives or inducing causes, being subjective in nature, are not always easily discoverable. Without further discussion, it is our opinion that, under all of the circumstances, the conclusion of the county court may not be disturbed.

(2) Did the court err to the prejudice of the appellants in striking out the testimony of Dr. Winnemann?

The appellants insist that the court erred in so doing. They contend that sec. 325.21, Stats. 1931, gives to the personal representative of a deceased person the absolute right to waive the privilege which the statute creates and protects. The respondent, on the other hand, contends that the statute merely grants to "the personal representative or other person authorized to sue for personal injuries" the right to waive such privilege, and that this is not such a case. Just how far the legislature intended to go in removing the bars of the former statute (sec. 325.21, Stats. 1925) by enacting ch. 334, Laws of 1927 (sec. 325.21, Stats.

1927), is not entirely clear. If the legislature was prompted to act in response to the decisions of this court in *Maine v. Maryland Casualty Co.* 172 Wis. 350, 178 N. W. 749; *Borosich v. Metropolitan Life Ins. Co.* 191 Wis. 239, 210 N. W. 829, and especially to the vigorous suggestions contained in the dissenting opinion of Mr. Justice OWEN, filed in the *Maine Case,* the contention of the appellants would seem to be sound. However, in the view we take of this case we deem it unnecessary to construe this statute at this time.

Even assuming, but not deciding, that the testimony of Dr. Winnemann should not have been stricken out, we cannot see how, under all of the circumstances, the act of the court in so doing constituted prejudicial error. The trial of the issues herein was to the court, and, considering the very strong convictions which the county court expressed in stating its conclusions, it is certain that the testimony of Dr. Winnemann, if it had been considered by the court, would not have altered the conclusions reached by it.

*By the Court.*—Order affirmed.

The following opinion was filed July 1, 1932:

NELSON, J. (*on motion for rehearing*). Upon the motion for rehearing the principal contentions of the appellants are as follows: (1) That the decision rendered in this matter on the 5th day of April, 1932, is contrary to the undisputed evidence in the case, because of misapprehension thereof by this court, and is erroneous and contrary to law; (2) that sec. 72.01 (3) of the Wisconsin Statutes, as construed and applied by this court in its decision, operates to create a presumption which is in fact irrebuttable and which violates the due process of law provision of the Fourteenth amendment of the constitution

of the United States, as construed in *Estate of Schlesinger v. Wisconsin*, 270 U. S. 230, 46 Sup. Ct. 260; (3) that secs. 72.01 (3), 72.02, and 72.03, as construed and applied by this court in affirming the order of the county court, operate to create a graduated tax on gifts *inter vivos*, in violation of the due process of law provision of the Fourteenth amendment of the constitution of the United States and in violation of sec. 1, art. VIII, of the constitution of the state of Wisconsin; (4) that the statutes above mentioned, as construed and applied by this court, are unconstitutional in that they deprive appellants of their property without due process of law, in violation of the Fourteenth amendment of the United States constitution, by requiring them, under sec. 72.05 (1), personally to pay a tax on property belonging to strangers and by thus exacting tribute from appellants based on the wealth of others, contrary to the decisions of the supreme court of the United States in *Heiner v. Donnan*, 285 U. S. 312, 52 Sup. Ct. 358, 76 Lawy. Ed. 772, and *Hoeper v. Wisconsin Tax Comm.* 284 U. S. 206, 52 Sup. Ct. 120.

We have given careful consideration to appellants' contentions with the result that we deem them, and each of them, without merit.

Motion for rehearing denied, with $25 costs.