*Decision will be entered under Rule 50.*

Marie E. Harnischfeger, Walter Harnischfeger, and Rene von Schleinitz, Executors under the Last Will and Testament of Henry Harnischfeger, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 69636. Promulgated October 3, 1934.

*Louis Quarles, Esq., James T. Guy, Esq.*, and *Richard S. Doyle, Esq.*, for the petitioners.

*J. R. Johnston, Esq.*, for the respondent.

230

OPINION.

SMITH: The principal issue in this proceeding is whether the gifts made by the decedent within two years prior to the date of his death, which were valued by the respondent at the date of death at $1,951,-800.50, were made in contemplation of death and are therefore to be included in the gross estate for estate tax purposes.

The deficiency involved herein was determined under the provisions of section 302 of the Revenue Act of 1926, which, so far as pertinent to the question at issue, reads as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*  \*  \*  \*  \*  \*  \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. *Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property; or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title.* Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. [Italics supplied.]

The second sentence of subdivision (c) italicized above was held unconstitutional in *Heiner* v. *Donnan*, 285 U.S. 312. Thereafter section 302 (c) of the Revenue Act of 1926 was amended by an act approved March 3, 1931, and by section 803 (a) of the Revenue Act of 1932, by which amendment the conclusive termination was eliminated. The amendments were not, however, declared to be retroactive. The respondent has determined, however, that the gifts in question were made in contemplation of death and his determination is prima facie correct. Whether the gifts under consideration in this proceeding were made in contemplation of death is a question of fact which must be determined from the evidence before us, and the burden of proving that they were not so made rests upon the petitioners.

In *United States* v. *Wells*, 283 U.S. 102, it was stated with regard to the meaning of the phrase " in contemplation of death ":

\* \* \* It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts causa mortis, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. \* \* \* The statutory description embraces gifts inter vivos, despite the fact that they are fully executed, are irrevocable and indefeasible. \* \* \* The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. \* \* \* As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be " contemplated," that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. \* \* \*

As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is "near at hand."

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

* * * There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute.

A careful weighing of the evidence in this proceeding leads us to the conclusion that the gifts were not made in contemplation of death. It is quite apparent that the reorganization of the Harnischfeger Corporation in 1929 was not prompted by any thought of death on the part of the decedent. The time was propitious for the selling of stock in the corporation to the public. The corporation was heavily in debt to the banks. It needed additional funds. The decedent also owed an estate $150,000 for assets purchased from it.

By the sale of shares of stock to the public the decedent temporarily lost control of the corporation. His attorneys suggested to him the organization of Harnischfeger Investment Co. for the purpose of regaining control of the corporation in the manner pointed out by the attorneys. This was done.

The decedent's only daughter and his son-in-law were ill and they were going to move to Germany to reside there permanently. The decedent wished them to have independent incomes.

It was pointed out to the decedent that after the reorganization of the Harnischfeger Corporation he would be subject to heavy in-

come taxes upon his income, and also how these income taxes could be minimized by making gifts of the stock to his wife and children. This appears to us to have been the predominant motive of the decedent in making the gifts of stock of Harnischfeger Investment Co. to his wife and children. Consonant with the thought the decedent discovered that the income tax liabilities of each member of his family would be further minimized by making donations of stock to the Harnischfeger Foundation, Inc. It was the decedent's thought that his own income tax liability and that of his wife and two children might be minimized each year for a perod of four years by donations of a portion of the stock of the Harnischfeger Corporation, which he proposed should be given ultimately to the Foundation. The gifts of the Harnischfeger Corporation common stock to the amount of 10,330 shares were therefore made to the decedent's wife and his two children with this sole purpose in view. It was not the decedent's intention that the donees of this stock should retain it permanently.

Where the dominant motive for making gifts is to escape income tax liability, such gifts are not includable in the gross estate. *Emily J. Pratt et al., Executrices*, 18 B.T.A. 377; *R. B. White, Executor*, 21 B.T.A. 500; *Safe Deposit & Trust Co. of Baltimore* v. *Tait*, 3 Fed. Supp. 51; *American Security & Trust Co. et al., Executors*, 24 B.T.A. 334.

As a further motive for making the gifts the decedent wished to insure financial independence for his wife and children. Such gifts have been held not includable in the gross estate for tax purposes. *Philip T. Starck, Executor*, 3 B.T.A. 514; *Rochester H. Rogers, Executor*, 21 B.T.A. 1124; *Willard Foster et al., Executors*, 25 B.T.A. 414; *Delaware Trust Co.* v. *Handy*, 53 Fed. (2d) 1042; affd., 285 U.S. 352.

The facts here are similar to those in *Commissioner* v. *Nevin*, 47 Fed. (2d) 478; certiorari denied, 283 U.S. 834. Up to within a short time of his death the decedent in this proceeding took an active interest in the management of his business, was mentally and physically alert, was cheerful and optimistic, and was still planning for the future. The decedent there was 83 years of age at the date of death and was not in as good health comparatively as the decedent in this proceeding at the time of his death at the age of 75 years. The court held, affirming the Board, 16 B.T.A. 15, that the gifts of approximately one half of his large estate to his son were not made in contemplation of death.

We have set forth above the detailed facts concerning the decedent's state of health and mind for a period of years preceding his

death, during which the gifts in dispute were made. All of the evidence indicates that the decedent was in the best of health and spirits at the time the gifts were made and that he had given very little thought to the eventuality of death. On the contrary he continued up to the very day of his death to take an active part in his business and to plan for its future expansion and development. His death came very suddenly from an unexpected cause. While it is true that in reorganizing his business and dividing the interests among the other members of his family he was "putting his house in order", as the respondent contends, there is no indication whatever that what he was doing was in contemplation of death. The things done are all quite as reasonably to be associated with purposes relating to life as those relating to the eventuality of death. *United States* v. *Wells, supra.*

The respondent relies strongly in his contention in this case upon the holding of the Supreme Court of Wisconsin in *In re Harnischfeger's Will*, 208 Wis. 317; 242 N.W. 153. In that case it was held that gifts and transfers here under consideration were taxable in the decedent's gross estate for purposes of the estate tax levied by the State of Wisconsin. After a lengthy discussion of the meaning of the phrase "in contemplation of death" with reference to the case of *United States* v. *Wells, supra*, the court stated in conclusion as follows:

It is earnestly contended that, since the deceased apparently enjoyed good health up to the time of his death, was cheerful and optimistic, was actively engaged in conducting a large industry, was making plans for industrial developments which involved new undertakings and enterprises, the presumption to which the statute gives rise was clearly overcome, and that it was affirmatively shown that the gifts were not in fact made in contemplation of death. This argument would be quite persuasive did it not appear that in the fall of 1929, and continuing into February of 1930, the deceased was engaged in carrying out extensive plans looking to the putting of his house in order. He was then nearly seventy-four years of age. He reorganized the Harnischfeger Corporation so that stock might be listed on the Chicago Stock Exchange and so that some of it might be sold to provide funds to liquidate his indebtedness. He organized the Harnischfeger Investment Company so that he and the trustees under his will might have unquestioned control of the corporation. He organized the Harnischfeger Foundation for the benefit of the employees of his company and provided for its permanent endowment out of his properties. He gave large gifts to his wife, who was then about seventy-six years of age, and also large gifts to his son and daughter, as well as substantial gifts to some of his faithful employees and to some of his other relatives. He made arrangements for giving $50,000 to his native village of Salmuenster for the purpose of founding a school, and finally, on February 9, he executed his will, which consisted of twenty typewritten pages, evidenced much thought and planning, but by which nothing was bequeathed directly to his son or daughter, and by which the residue of his estate, worth only about $440,000, was given to his wife.

While there is no testimony tending to show that the deceased had any premonition or promptings of death as distinguished from that ordinary expectation of death which every one entertains, or that he was conscious or had knowledge of any disease or other affliction, there is abundant evidence, as it seems to us, to support the inference that the gifts were made in contemplation of death. While the enjoyment of health, actively engaging in business, and the making of plans for the future may at times, and in certain cases, be very persuasive, they are not in any sense conclusive. Impelling motives or inducing causes, being subjective in nature, are not always easily discoverable. Without further discussion, it is our opinion that, under all of the circumstances, the conclusion of the county court may not be disturbed.

We have given careful consideration to the well considered opinion of the Supreme Court of Wisconsin. It is to be noted, however, that the decision of that court was under a state statute which provided in part as follows:

* * * Every transfer by deed, grant, bargain, sale or gift, made within two years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section.

The decision of the Probate Court of Milwaukee County, which was affirmed by the Supreme Court of the State of Wisconsin, was made upon an entirely different record from that which is before us. The court apparently stresses the fact that in February 1930 the decedent made his will and bequeathed nothing thereby directly to his son or daughter. Apparently, as contended by counsel for the petitioners, that court was not in possession of the facts that the decedent had theretofore in prior years made wills and that the will executed in 1930 was necessitated by changes made in the ownership of his property. The decision of the state court has no binding effect on the Board. *Joseph Edward Phillips, Executor*, 7 B.T.A. 1054; *Commissioner* v. *Nevin, supra.*

Upon the evidence we are constrained to hold that the gifts made by the decedent in 1929 and 1930 were not made in contemplation of death. Having reached this conclusion, it is not necessary to pass upon the alternative contentions of petitioners.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

GOODRICH concurs in the result.