Kim D. TESKY,
Plaintiff-Appellant,

v.

Keith A. TESKY and American Family Mutual Insurance
Company, American Structural Systems, Inc., State
Farm Mutual Automobile Insurance Company, and
Lincoln County Department of Social Services, De-
fendants-Respondents.†

Court of Appeals

*No. 81–1216. Submitted on briefs December 21, 1981.—Decided*
*February 23, 1982.*
(Also reported in 317 N.W.2d 172.)

† Petition to review granted.

For the appellant there were briefs by *Schmitt, Hartley, Arndorfer & Schnabel, S.C.,* of Merrill.

For the respondents there was a brief by *Schmidt, Thibodeau & Schmidt* of Wisconsin Rapids.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. Kim Tesky appeals a judgment dismissing his action against State Farm Mutual Automobile Insurance Company and its insured, American Structural Systems, Inc., for personal injuries he received in a motor vehicle accident. The court found that American was not the owner of the vehicle. Tesky contends that the court erred in denying his request for a jury trial on the ownership question and that the court's finding of ownership is contrary to the evidence. Because we conclude that the trial court did not abuse its discretion in denying Tesky's demand for a jury trial and that its finding of ownership is not against the great weight and clear preponderance of the evidence, we affirm.

American insured its fleet of vehicles under a policy issued by State Farm. American assigned one of its fleet vehicles, a 1973 Chevrolet truck, to its employee, James Puphal. Puphal agreed to purchase the truck and made payments to American through deductions from his paychecks. American retained the truck's title certificate, and the truck continued to carry license plates issued to American. Approximately four months after Puphal began to make payments for the truck, he permitted Keith Tesky, Kim's brother, to use it. While Keith was operating the truck, with Kim as his passenger, it was involved in the accident in which Kim sustained his injuries.

Kim originally demanded that his claim be tried to a jury, but prior to the trial of the ownership issue, he waived that demand and the issue was tried to the court. The court, relying on *Knutson v. Mueller,* 68 Wis. 2d 199, 228 N.W.2d 342 (1975), concluded that because American

had neither endorsed nor delivered the truck's title certificate to Puphal, American remained the truck's owner for purposes of insurance coverage. The court did, however, indicate that it believed American was not the true owner of the truck.

After the court had entered judgment on the ownership question and before trial of the remaining issues, the supreme court decided *Bacheller v. Employers Mutual Liability Insurance Co.*, 93 Wis. 2d 564, 287 N.W.2d 817, *modified*, 93 Wis. 2d at 573, 290 N.W.2d 872 (1980). *Bacheller* modified *Knutson* to permit transfer of ownership to be proved by the intent of the parties where title had not been endorsed or delivered. On State Farm's motion, the court vacated its judgment and ordered that the issue of ownership be retried. Tesky demanded that the retrial be before a jury. The trial court denied this demand and decided the issue on the basis of the evidence presented at the first trial. The court then concluded that Puphal owned the truck and dismissed American and State Farm from the action.

## JURY TRIAL WAIVER

Whether a party should be relieved from a waiver of a jury trial is generally within the discretion of the trial court. *Brown v. Cohn,* 88 Wis. 627, 636–37, 60 N.W. 826, 829 (1894) ; Annot. 64 A.L.R.2d 506, 519 (1959). A decision of the trial court that requires the exercise of discretion will be affirmed on appeal if there appears to be any reasonable basis for the decision, *Littmann v. Littmann,* 57 Wis.2d 238, 250, 203 N.W.2d 901, 907 (1973), and this court will generally look for reasons to sustain the trial court's exercise of discretion. *Loomans v. Milwaukee Mutual Insurance Co.*, 38 Wis. 2d 656, 662, 158 N.W.2d 318, 320 (1968).

We conclude that the trial court did not abuse its discretion in refusing to grant Tesky's subsequent jury

demand. As a general rule, a party will not be held to a prior jury trial waiver when the trial court's judgment is reversed on appeal and the matter is remanded for a new trial. *See Nedrow v. Michigan-Wisconsin Pipe Line Co.*, 246 Iowa 1075, 70 N.W.2d 843, 844 (1955); Annot., 64 A.L.R.2d 506, 574 (1959). This rule, however, is not without exceptions.

In *Spaulding v. Cameron*, 127 Cal. App. 2d 698, 274 P.2d 177 (1954), the trial court's judgment had been reversed in part and remanded for the consideration of an issue that had not been decided in the first trial. In upholding the trial court's decision to hold the parties to their original jury waiver, the court stated:

If the trial court on motion for a new trial had discovered its error and had granted a limited retrial . . . or if after the evidence was closed the trial had been re-opened for evidence . . . it could scarcely have been contended by the defendant that in the further proceedings he was not bound by his waiver of a jury. We see no substantial difference between the proceedings that were had pursuant to the mandate of the Supreme Court and proceedings that would have been had if the trial court of its own volition had re-opened the case or had vacated its findings and judgment in part . . . .

*Spaulding*, 127 Cal. App. 2d 698, 274 P.2d 177, 181 (1974).

Here, the trial court retained full power to vacate the judgment it entered after the first trial. *See* sec. 806.07, Stats. The court could also have simply reopened the case for the taking of additional testimony on the issue of ownership. Although *Bacheller* permitted the court to consider the issue of ownership in light of evidence bearing on Puphal's and American's intent, such evidence had been presented at the first trial. Under these circumstances, the trial court was entitled to consider the duplication of time and effort the retrial of the

case to a jury would have entailed. *See Hackin v. Pioneer Plumbing Supply Co.*, 10 Ariz. App. 150, 457 P.2d 312, 316 (1969). Based on these considerations, the court did not abuse its discretion in denying Tesky's jury demand.

OWNERSHIP OF THE VEHICLE

The trial court based its conclusion that Puphal owned the truck upon its finding that American and Puphal had intended Puphal to be the truck's owner. The court specifically found that Puphal had complete control over the truck, that he used the truck mainly for pleasure, and that he was responsible for the truck's maintenance. The court also found that American retained title to the truck as security. Tesky contends that the evidence does not support the court's findings, but instead supports the finding that American never intended to relinquish an ownership interest in the truck.

This court will not upset a trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *Fidelity & Deposit Co. v. First National Bank*, 98 Wis.2d 474, 484, 297 N.W.2d 46, 51 (Ct. App. 1980). The evidence supporting the trial court's determination of the facts need not itself constitute the great weight and clear preponderance, and reversal is not required simply because there is evidence in support of a contrary finding. *Id.* To command reversal, the evidence supporting a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *Id.*

The record supports the trial court's finding that American intended Puphal to be the truck's owner. Berval Thorson, American's manager, testified that Puphal had exclusive custody and control of the truck

after American began deducting payments from Puphal's paychecks. He also testified that Puphal could use the truck as his personal vehicle and that American had agreed to reimburse Puphal for gasoline when he used the truck for business purposes.[1] Puphal testified that he seldom used the truck at work, that he was responsible for the truck's maintenance, and that he considered himself to be the truck's owner after American began deducting payments from his checks.

The finding that American intended to retain only a security interest in the truck is also supported by the record. Thorson testified that American retained the truck's title to protect its interest in the truck. Puphal testified that at the time he agreed to purchase the truck, he undersood that he would not receive title until the truck had been paid for.

Although American failed to endorse and deliver the truck's title certificate to Puphal and Puphal did not obtain new license plates for the truck, these facts do not require a finding that the parties did not intend Puphal to be the truck's owner. While *Bacheller* recognized that endorsement and delivery of title gives rise to a conclusive presumption of a transfer of ownership, where there is no proof of endorsement and delivery the intent and conduct of the parties governs. *Bacheller,* 93 Wis. 2d at 573c, 290 N.W.2d at 874. Puphal's failure to apply for new license plates is only persuasive evidence bearing on his intent to take title to the vehicle. *See Klapps v. American Insurance Co.,* 26 Wis. 2d 664, 669, 133 N.W.2d 248, 251 (1965). Similarly, the fact that American

---

[1] The trial court's findings of fact state that American would reimburse Puphal for mileage. Although the record indicates that American agreed to reimburse Puphal only for gasoline, in light of the other evidence bearing on American's and Puphal's conduct and intent, we attribute little significance to this discrepancy.

continued to insure the vehicle does not unequivocally demonstrate that American intended to retain ownership. Thorson testified that as part of the sale agreement, Puphal agreed to reimburse American for insurance payments and licensing fees, an arrangement equally consistent with American's desire to protect its security interest in the truck.

*By the Court.*—Judgment affirmed.